We'll hear the first case, Fasano v. Yu. Good morning, Your Honors. Good morning. May it please the Court, I'm Sam Lieberman on behalf of co-lead plaintiffs Joe Fasano, the Altameo Optimum Fund and Altameo Asset Management. Your Honor, the primary thrust of this appeal is that the court below erred in failing to even consider a mandatory forum selection clause, requiring litigation of all controversies against the company relating to the securities laws exclusively in the city of New York. Are all the members of the special committee shareholders? Are all the members of the special? The people that you sued, are they all shareholders? Are all the defendants shareholders? I'm not aware if all the defendants are shareholders, but all of the plaintiffs. Well, I understand the plaintiffs are, but I'm asking if all the defendants are. Because with regard to the forum selection clause, that only relates to people who own stock, right? It relates to, the forum selection clause relates to all controversies. Well sure, but a contract only binds those to whom agree to it. So my question is, were all the defendants bound by that agreement, were they, did they own stock? Were they, I mean, the special committee was a group, there was a, the people who were, that you say breached their fiduciary duty with regard to approving the offer, were they shareholders? I'll have to look back in the record. You don't know? I don't know if the special committee members. I'm surprised that you don't know. You come here and you argue the clause. Well, your honor, the test is whether. I thought you would have thought about the fact that who it binds. Now, it clearly binds the corporation. And so that, so the question in my mind is how, what role does it play in the context of all the defendants that have been sued? Some of whom might not necessarily have been bound by it. And so whether it, does this inform a discretionary decision or is it enforcing a contract, right? Well, Aguas Lenders, your honor, Judge Wesley, speaks directly to this point. Aguas Lenders identifies the test as well in the cases it identifies. And it looks to whether or not the parties are closely related to the party that is bound by the contract. So Aguas Lenders in that case held that a successor in interest was bound by a contract signed by its predecessor. Do you think the special committee is close enough in that regard? It may be, it may be. That's an issue, but here's what I, here's where what I think is clear. I'm just trying to understand, I'm not trying to- Yeah. Yeah, and so, well Judge Wesley, let's take it one step at a time. With respect to the special committee, these are long time directors who've served on the board for many years. And we do believe there's authority. Now, New York law is the law that was chosen by the forum selection clause. And New York law has recognized that directors can be deemed closely related. But more fundamentally, what I'd say is, let's look at the other defendants. Aguas Lenders says that non-signatories can be bound in certain circumstances. That's correct. Do those circumstances exist here? Yes, they do. And what are they? I'll tell you exactly what the circumstances are. You have, most of the defendants here were part of a controlling group that had senior management positions with the company. For example, Ms. Yu Yu was executive chairwoman of the company and was the spouse of the controlling stockholder, Mr. Woking Lee, who's also the CEO, a director, and controlling stockholder of the company. They're officers and directors of the company, which clearly is bound by the agreement. Exactly, but they're also controlling stockholders, and they're a controlling stockholder group. And by having that principal position, that makes them closely related. And our point is that the court didn't even address the extent to which this clause applies. You didn't really lead with it, did you? That's a fair point. Why didn't you? Well, the reason is- You're now sort of going for broke on this, and perhaps with good reason. The case law is strong. Yes. Why was this all not quite under the radar, but certainly not the main point of your brief? Why not? Well, the reason is because there's not that much case law with respect to Judge Wesley's point, which is what would happen with the special committee defendants. And our concern was we wanted to address the binding nature of the clause, but then we also had to address, within a strict 25-page limit, all of the factors that could apply if, to the extent the special committee defendants aren't bound, and then you have to address the other potential factors that you have to deal with with form nonconvenience. And look, that's the way the doctrine is set up. There are so many factors- All right, but this should have been point one, and then the form nonconvenience factors you maybe get to later, it seems to me. But there's also an arbitration clause here, too, right, which nobody's talking about. What does that do with the claims here? Well, first of all, that arbitration clause also talks about New York, and it's important that it doesn't say Cayman. But how it's written is it's a broad clause addressing any controversy against the company. The breach of fiduciary duty is not going to be in court. It's going to be in an arbitration, right? No, actually not at all, because it's the any controversy language. Now, this court in Robie held that that's extremely broad language when you deal with controversy. Because remember, controversy, claim, or cause of action. Cause of action and claim are individual points. Any controversy, so it's an arbitration clause, except unless there's a controversy. And we can go to page 8389 to look at the clause. And that's the point here, is that they adopted a broad clause to address any controversy that's against the company. And relating to or based upon the provisions of the federal securities laws. Reference to a controversy means the whole dispute has to go to federal court. And reference to relating to the securities clause also brings the fiduciary duties point. And I want, Judge Sullivan, I'd raise the point about, let's remember the Falcone case. Let's remember the Libera case. In the insider trading context, a confidentiality policy was used to create a fiduciary duty that bound the party to insider trading laws. Same thing applies here. The fiduciary duties here are based on a Sarbanes-Oxley code of conduct under section 406 of Sarbanes-Oxley. They chose to adopt that because Dang Dang chose to lure United States investors into invest with them. It chose to adopt a Sarbanes-Oxley code of conduct. And that code of conduct deals with conflicted related party transactions, and it deals with false public disclosures. They chose it, and in their public statements, they say, we're not relying on home country practice with respect to our corporate governance. At 8364, you can find that. And in the code of conduct, they also say, this will bind us. We adhere to these higher standards to the extent they conflict with those laws of Cayman. And that's the point here. What distinguishes this case is that Dang Dang- Before you run out of time, how do you respond to the argument that the mandatory forum selection clause point was waived? Yes. I mean, you mention it, but what's your response? Yeah, well, look right at the Looney case. In Looney, they didn't even identify the case law. And they didn't even, I'd cite the case law- What did you do here? What we did here, your honor, is we quoted the clause twice. We did it in block quotes. We actually italicized the actual language that was binding. We cited the case on point. Aguas Lenders is the leading second circuit case on the issue of binding forum selection clause. We told the court, Aguas Lenders should govern here. We told the court that it would be an abuse of discretion for the court not to consider this. We actually put it in, we put it in an extensive, we referred to this on page 7 and 14 of our opposition brief. And we actually put it in with detailed paragraphs. So if we identify the case, and we identify the line of authority, that is not waiver under Looney. It's not waiver under Harrell where the government put in evidence without the case law. And we'd note that at SPA 202, the court actually cites Aguas Lenders. So we actually thought about, should we bring a motion for reconsideration here? And when we saw that Aguas Lenders was cited by the court, we said no, the court saw the relevant case on point. And the court surely saw our brief. The court- I didn't see one word about the agreement. I'm really surprised you didn't move to reconsideration because, I mean, I agree with you. I've got your memorandum of law in opposition to the motion for forum non-convenience. And you're absolutely right, you did block quote from the forum selection clause at page 7. So I mean, from my perspective, I think, it seems to me you brought it before the court's attention. But the court never said a word about it. Yeah, I just find it so odd to me, unusual to me, for a court that's particularly careful. And so, but hindsight's 20-20, and certainly having not moved for reconsideration doesn't affect your legitimacy, your ability to raise it here. I just think you might have saved yourself some time. Look, we would have obviously- Well, hindsight's 20-20, you know, you saved yourself today. I wish I'd moved for reconsideration after Wesley asked us that question, and Judge Chin did. But, you know, that's what we all suffer from, I suppose. Okay, thank you. Thank you. You have time for rebuttal. We'll hear from the other side. Good morning, your honors. Abby Rudson from O'Melveny and Myers for the defendants. I will start where you left off with Mr. Lieberman. Obviously, the parties dispute whether the forum selection clause argument was officially waived. But I don't think this court has to reach that issue. There is a basis for arguing that it was waived, because it is indeed right there in the memorandum in opposition to the motion. So here's the basis. The standard of review for this court is whether Judge Fela abused her discretion. Well, not if this forum selection clause binds everybody. If this forum selection clause binds everybody, one can look, can interpret from our case law, which may be muddled to some degree, that that trumps forum non-convenience analysis absent a clause, an agreement which is oppressive in some way. And so it completely alters the arrangement and invokes not abusive discretion, but de novo review. This is a law issue. I agree, your honor, that the application, the sort of when a forum selection clause trumps the forum non-analysis is a question of law. The problem is, that's the argument they didn't make below. So if that's the argument, then that has been waived. I think it's important. I do want to- Well, they refer to it as a mandatory forum non- Correct. Selection clause, both in their opening memo and in their reply. No, they only had an opposition. You refer to it, I'm sorry, you refer to it as mandatory in the reply. Yes. Yeah, you do. Right, we don't. You acknowledge that it's a mandatory forum selection clause? We do, your honor. I would like to just point you to what they told Judge Fala, because I think the words are actually important. But that's slicing the onion real thin, isn't it? I mean, they put the language of the forum clause in front of Judge Fala. And you're saying that because they said, well, this is just something to consider in the analysis, that that somehow weighs an argument that she was bound by it? Yes, for two reasons. One, because even they didn't argue below that it trumped the forum non-convenience analysis. They argued it as a fourth reason why their choice of forums should be entitled to deference, which is the first step of the forum non-analysis. And in her exercise of discretion? I don't think a judge who's writing a 31-page opinion and addressing lots and lots of arguments needs to address every single argument. But I'll get- You don't think the forum selection clause is in any way relevant to her exercise of discretion? The parties who agreed to a forum, that's not relevant with regard to their now taking a position that it's inconvenient? Well, if I could say- I don't think that's relevant. Of course it's relevant, and today- Of course it's relevant. Then how can we say that she exercised her discretion in a reasonable way? Well, obviously, I wish she had mentioned it. So do I. But they argued it only in the context of deference, and she spent four pages analyzing why the plaintiffs were not entitled deference. And that was not an abuse of discretion. She applied a traditional forum non-convenience analysis, correct? Correct, because that is what both parties argued for. Our cases say that if there is a mandatory forum selection clause, that changes the analysis, right? That's what our cases say. Okay, can I get to the actual- Yes, yes. And did she apply the analysis that our cases call for when there is a mandatory forum selection clause? The first step in analyzing whether a mandatory- The answer to my question is no, right? She did not apply the modified analysis that our cases call for. She did not because the first step in assessing whether a mandatory forum selection clause applies is whether it covers the claims. It's a matter of contract. Did she engage in that analysis? No. Not in writing, she did not. So I don't know whether she thought about it. Did she do it orally? No, no, no, there was no, I didn't mean to say that. There's nothing in the record to reflect any kind of consideration of that, right? Correct. But I'd like to get to the substance of why it's inapplicable on its face and why she didn't abuse her discretion by not considering it. The clause, as you have pointed out, is an arbitration clause. It says that any controversy, claim, or cause of action brought by any party against the company shall be arbitrated. Provided, however, a securities claim is not arbitrated because, of course, the law doesn't allow them to mandate arbitration of securities claims. So they can elect out of it with regard to the securities claim. Correct. This isn't a securities case. Their claim, this is how they described their complaint in paragraph one of their complaint. It's how they described their claim. This is a class action of minority shareholders of e-commerce China Dong Dong. Plaintiffs seek damages as a result of the board of directors agreeing to sell Dong Dong to a buyer's group that held controlling shares. On grossly unfair terms and badly underpaid the company's minority stockholders. That's paragraph one. Paragraph two is the going private merger was fundamentally unfair to minority stockholders. Paragraph three is we want the amount of damages that represents what we should have gotten the merger. That's a classic state law appraisal breach to fiduciary duty claim. It's not a securities case. Well, they certainly cite the Securities Exchange Act of 1934, right, as one of their causes of action. No, they, oh, I'm sorry, yes, of course, 13E is within the 34 Act, yes. So doesn't that then make this a securities case? No, for two reasons. Why not? So again, what they argued to Judge Fala, this is how they described it. The clause covered only claims under federal securities laws. The 13E3 claim is count four of their five count complaint. So on its face, doesn't apply to the other four counts. There is no such thing as a 13E3 claim. This court has never found an implied private right of action under 13E3. Also, as they told Judge Fala, this is the quote from their brief, the clause applies, is mandatory for dong-dong. And the clause itself says it applies only to claims against the company. They never suggested below that the clause would cover the claims against the 12 other defendants. That's a completely new argument on appeal. So it's a little unfair to us and to Judge Fala to say that she got it wrong for not applying this clause. That even as they- Why shouldn't we send it back to her and let her take a look at this and tell us if she omitted the analysis, why she omitted the analysis, whether she did the analysis in her head and just didn't write it, why shouldn't we remand it? I think that's the essence of an abuse of discretion standard, Your Honor. She addressed the arguments that the plaintiffs and the defendants presented to her. I just want to point out one statistic because I think it really shows how this was unfair to us and Judge Fala. They cite 78 cases in their briefs to this court. Of those 78 cases, 59 of them, more than 80%, were not cited to Judge Fala by either party. Their entire argument has changed because they can't actually criticize the analysis she did. And to say now that although we pointed to this clause and we told the court it only applies to claims under the securities laws and it only applies to one of the 13 defendants, she somehow got it wrong by not going further and saying, wait a minute. No, this could be a real issue here. I think I understand what you're saying. And there's some, I got a portion of it, but here's the problem. You could have responded, I mean, you made the motion to dismiss the form of non-convenience, okay? You acknowledged, you were aware of, because in your own papers you acknowledged this form selection clause. You acknowledged that. So everybody knew it was there. And there's a very strong, colorable argument that the remedy here is, well, the forum is an arbitration panel as opposed to a courtroom. But neither side sought the court to invoke an arbitration. Both sides sought to use the forum selection clause or to deal with the forum selection clause as some kind of indication of the party's willingness to litigate in New York. And yet the court never, ever, I mean, so I could see an argument being made that this is a factor in discretion because the clause is an indication of the party's willingness to litigate here, albeit in arbitration. Whereas the parties decide we don't want to arbitrate it, we'll litigate it. And so if both sides pull back on arbitration, there's still an indication of a willingness to litigate here. But the problem I have is that you're still left with wondering why didn't the court think about that? because you're right, I mean, it did a very careful analysis. I agree with you. That's the thing that's so, it's just a disconnect. It seems like, it seems so odd to me. Well, isn't it there? And it'd be very simple to say, well, the parties did designate New York for arbitration. But that raises a whole number of different concerns from litigation. And so, therefore, I'm going to give her very little weight. Right. If she just said that, then we'd have something to understand. Believe me, I wish that she had. But I just want to reiterate, they argued this as the fourth reason. They had pages on why they should get deference, and it gets to fourth, and she's- Well, it ain't so bad if you're the fourth of four children. You're pretty happy to be still number four. You can hit a lot of home runs in the fourth inning. Greatly by their parents, actually. But I don't think, look, they certainly haven't cited a case, and I don't believe it's the law, that you abuse your discretion by not addressing every single sentence of the losing party's brief. She spent several pages- You put it that way, every single sentence. I agree with you on that. But this appears to me to be a fairly important issue, because it alters the analysis to be applied. But as you've pointed out, they didn't argue it. This wasn't their primary argument. This was, we should get more deference. The fact that it might be their fourth argument doesn't mean they waived it. It just means they made it fourth. But even if it's their fourth argument, it was their fourth argument as to why they should get deference in their form choice. She gave them deference in their form choice. We argued for none, and she gave them some, diminished. Who else picked that form? Dang dang. Only for securities claims. Dang dang, okay. Only for securities claims. No, as to any other claim. For arbitration. As to any other claim that wasn't subject to arbitration, litigation in state or federal court in the borough of Manhattan. That's the second portion of that form selection clause. So please don't tell me that it was only as to securities transactions. You know better than that. I'm confused, Your Honor. The clause- It says, for any other claim not covered by the transaction, they shall litigate in federal court, not covered by 7.06. It says, any controversy claim or clause arising out of or relating to shares or other depository shares not covered under, not subject to arbitration. Not subject to arbitration, right, but the first clause explains that every single claim is subject to arbitration. I understand that, but it said others that are not securities claims that might be litigated arising out of a controversy about the shares. There could be litigated in federal court. That's one interpretation. I don't think that's a fair interpretation, because it says any controversy claim is arbitrated, provided, however, securities claims aren't arbitrated. And then it says, any controversy that's not arbitrated should be in New York, meaning only the securities claims could be in New York. Why would anything be in the Cayman Islands? Right. That's, I mean, so, in other words, there's an arbitration clause that either applies to this controversy or not. But if it does, then you shouldn't be litigating it in the Cayman Islands, right? You should be arbitrating it here. Well, the right to enforce an arbitration clause is, of course, waivable. Well, so, are you arguing that that's been waived at this point? No, we made a tactical decision. We think the right thing here is for the Cayman Islands judge, who was already addressing appraisal proceedings, because that's what they want. As the most appropriate forum, we're certainly entitled to ask that it be sent there and not argue for arbitration. We can waive it, but we haven't, because as we said in our lower court brief, if the forum non-motion were denied, we'd probably move to compel arbitration instead. Thank you. We have your argument. We'll hear from the bottom. I think Judge Sullivan put his finger on the point, on the key point, which is, what about Dang Dang? I mean, we're talking about the court below, and I love the court below. But Dang Dang chose, Dang Dang didn't argue below that it wants arbitration. Dang Dang is trying to bring this case and all the defendants in the Cayman Islands. Now, I would just go back to Aguas Lenders, which says, it actually said that there are other claims in Aguas Lenders that weren't directly covered by the forum selection clause there. And because it was overlapping parties, and overlapping claims, and overlapping witnesses, it said the whole matter should be bound and resolved in New York based on that forum selection clause. We think that binds here, and Aguas Lenders is the case on point. We said it should govern. Look, I'm the fourth child, so I get the point that Judge Wesley raised, and a cleanup hitter is the fourth hitter. And the fourth argument is an important argument. Look, I get it, it's a strange situation. It's not clear, but from the perspective of the plaintiffs, we did raise the issue, and we put it in block quotes. We identified the specific case on point. The Harrell case specifically talks about a situation where you raise an issue and say in the totality of circumstances below, it's one part of the totality of circumstances. And that preserved the issue, that you could argue that that one factor is dispositive later. That's the second circuit. Citizens United also said if you properly preserve the issue, then you can make any argument you want on appeal. Believe me, plaintiffs are the last party in the world that wanted to wait over a year to have this matter heard and have this case go all the way back to the Southern District, but we raised the issue. So what do you want? You want us to send it back to Judge Fela with what instructions? For what? Well, look, we think that based on the law we've provided here with respect to the closely related test, a reversal in remand is there. But at the very least, a vacater in remand to consider the provision. And we're serious, and when we're talking about the code of conduct applying here, the Falcone and Libera cases say that codes of conduct, and here which was adopted under Sarbox, can create fiduciary duties in the insider trading context, that's the securities laws, and they adopted that here. We think that's more than enough for all the controversies here, but at the very least we'd say vacate in remand. We do think there's enough to reverse and remand, but at the very least that a remand is required. Thank you. Well reserved decision. I actually argued both of you, I gave you a hard time, but you did a nice job. Thank you. We'll hear the next case. We gave him a hard time. Well, I did, I apologize.